UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

CASE NO: 8:25-cv-02250

**LINCOLN CAPITAL MANAGEMENT, LLC,**
a Texas limited liability company,

    Plaintiff,

v.

**ROBIN G. GORIS, individually,**

    Defendant.

_____/

## COMPLAINT

Plaintiff, Lincoln Capital Management, LLC ("Lincoln Capital") hereby files this Complaint against Defendant Robin G. Goris ("Goris") and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for defamation and related relief arising from Defendant Goris's deliberate and malicious smear campaign against Plaintiff, Lincoln Capital.

2. Goris, a guarantor on multiple multimillion-dollar loans issued by Lincoln Capital, defaulted on her obligations and, when held accountable by Lincoln Capital in court, retaliated by publishing false and defamatory statements accusing Lincoln Capital of fraud, extortion, concealment, and other unethical and criminal acts in the course of its trade and profession.

3. Goris's false statements, directed at third parties critical to Lincoln Capital's reputation, falsely portray Lincoln Capital as dishonest, predatory, and criminal in its business practices. These are verifiably false statements of fact, not protected opinion or rhetorical hyperbole.

4. Goris acted with actual malice by publishing falsehoods she knew to be untrue or with reckless disregard for the truth in order to damage Lincoln Capital's reputation and gain leverage in ongoing litigation concerning her defaulted loan obligations.

5. Goris's statements are defamatory *per se* under Florida law because they directly impute criminal conduct, fraud, dishonesty, and misconduct to Lincoln Capital in its trade and profession, inherently prejudicing Lincoln Capital's ability to conduct business in the financial services industry.

6. Lincoln Capital brings this action to vindicate its rights, restore its reputation, and recover damages, including presumed and punitive damages, for the substantial harm caused by Goris's defamatory publications.

**THE PARTIES**

7. Plaintiff Lincoln Capital is a Texas limited liability company organized and existing under the laws of the State of Texas, with its principal place of business in Texas. Lincoln Capital's members are citizens of the State of Texas. Accordingly, for purposes of 28 U.S.C. § 1332, Lincoln Capital is a citizen of Texas.

8. Goris is a natural person who is over the age of 18, *sui juris*, and a citizen of the State of Florida. She serves as Chief Executive Officer of Crisscross Center Co. ("Crisscross") and President of Brick By Brick Builds, Inc. ("Brick"), both Florida corporations.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

10. Complete diversity exists between Plaintiff and Goris. At all times material to this action, Plaintiff has been and is a citizen of the State of Texas while Goris has been and is a citizen of the State of Florida. Therefore, this Court has original jurisdiction of this action under the provisions of 28 U.S.C. § 1332.

11. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Goris is subject to personal jurisdiction here.

12. All conditions precedent to the institution of this action and to obtain the relief sought herein have been performed, have occurred or have been waived or otherwise excused.

## GENERAL ALLEGATIONS

### Lincoln Capital's Business and Reputation

13. Lincoln Capital was formed in 2011 and is the business of providing small to mid-size businesses with bridge loan interim financing for government guaranteed loans.

14. Lincoln Capital has funded more than 352 loans nationwide, helping hundreds of businesses expand, hire, and contribute to their local economies.

15. In the lending industry, trust, transparency, and ethical conduct are indispensable. Lincoln Capital's business depends on the confidence of borrowers, partner institutions, and regulators that it conducts its operations honestly and in compliance with law.

16. In the lending industry in which Lincoln Capital operates, trustworthiness, transparency, and fair dealing are imperative. Lincoln Capital's professional standing depends on the confidence of borrowers, financial institutions, and regulatory and quasi-regulatory bodies that it conducts business ethically, fulfills its commitments, and treats customers fairly.

### Brick, Crisscross and Goris Default on Loans

17. In or around May 2021, Brick borrowed $12,046,050.00 from Lincoln Capital pursuant to the terms of written Loan Agreements. Goris and Crisscross unconditionally guaranteed repayment pursuant to the terms of Guaranty Agreements.

18. But when it came time for Brick, Crisscross, and Goris to pay Lincoln Capital the amounts due under the Loans and guaranteed under the Guaranty Agreements, Brick, Crisscross and Goris refused, squarely breaching their contractual obligations and forcing Lincoln Capital to file a lawsuit against Brick, Crisscross, and Goris, and others, for breach of contract and foreclosure in connection with the unpaid principal and interest owed to Lincoln Capital.

19. This is when Goris, in retaliation, and to manufacture a false narrative to excuse her default, embarked on a campaign of defamation against Lincoln Capital, falsely accusing Lincoln Capital of criminal acts and dishonest and unethical conduct in its trade and profession.

## The False and Defamatory December 24, 2024 Letter

20. Specifically, on or about December 24, 2024, Goris authored and published a letter to third party Joe T. Ford (the "December 24, 2024 Letter"), attached as **Exhibit 1**.

21. In the December 24, 2024 Letter, Goris characterized as "objective facts" numerous false and defamatory statements about Lincoln Capital, including but not limited to:

   i. that Lincoln Capital's actions under James Robertson's leadership caused "significant financial and emotional strain" on Goris's family;

   ii. that Lincoln Capital created a "tangled web" ensnaring Ford's family, implying fraudulent and unethical conduct;

   iii. that members of Lincoln Capital's leadership, including "Brad and others," failed to share "the full extent of this lawsuit" with Ford, suggesting that Lincoln Capital's leadership engaged in concealment and withheld material information

    from Ford to protect themselves "out of embarrassment over the situation and its complexities";

  iv. that Goris possessed evidence of "troubling discrepancies and misconduct" by Lincoln Capital; and

  v. that Lincoln Capital misrepresented its contributions in connection with a $5,353,800 loan transaction.

22. These statements accuse Lincoln Capital of fraud, concealment, and misconduct, striking at the core of Lincoln Capital's integrity in its trade and profession.

23. The statements are verifiably false, were published without privilege, and were intended to injure Lincoln Capital's reputation and goodwill.

### The False and Defamatory Borrower Email

24. In or around August 2025, Goris authored and disseminated an email to at least one third party, a former borrower of Lincoln Capital (the "Borrower Email").

25. In the Borrower Email, Goris falsely stated, among other things, that:

  i. Lincoln Capital's mission is "to prey on [borrowers] and take advantage of them in every possible way";

  ii. Lincoln Capital engages in "extortion";

  iii. Lincoln Capital deliberately and regularly undertakes actions to the financial detriment and harm of borrowers; and

  iv. Lincoln Capital has engaged in "fraud" and "misconduct" involving financial services.

26. Each of these statements is categorically false.

27. These statements are categorical assertions of fact, not opinion, and are capable of being proven true or false.

28. The Borrower Email expressly accuses Lincoln Capital of criminal acts (fraud and extortion) and unethical practices, imputing conduct that constitutes defamation *per se* under Florida law.

29. Goris knew these statements were false or acted with reckless disregard for their falsity when she published them.

30. The statements in the Borrower Email were published without privilege and with the intent to damage Lincoln Capital's reputation, interfere with Lincoln Capital's business relationships, and dissuade borrowers from engaging with Lincoln Capital.

31. Goris's conduct in publishing both the December 24, 2024 Letter and the Borrower Email demonstrates a calculated pattern of misconduct aimed at destroying Lincoln Capital's business reputation, interfering with its relationships, and undermining its standing in the financial community.

## COUNT I
### Defamation *Per Se*
### (December 24, 2024 Letter)

32. Plaintiff re-alleges and incorporates paragraphs 1 through 31 as if fully set forth herein.

33. On or about December 24, 2024, Goris authored and published the December 24, 2024 Letter to third party Joe T. Ford. The December 24, 2024 Letter was received and understood by Joe T. Ford.

34. In the December 24, 2024 Letter, Goris stated that "My family and I are ***currently facing significant challenges due to our involvement with Lincoln Capital Management LLC.***"

35. In the December 24, 2024 Letter, Goris stated that her relationship with Lincoln Capital "resulted in *significant financial and emotional strain* on her family *due to actions taken under James Robertson's leadership*".

36. In the December 24, 2024 Letter, Goris stated that she has evidence of Lincoln Capital's "*troubling discrepancies* and *misconduct*".

37. In the December 24, 2024 Letter, Goris stated that in connection with a loan in the principal amount of $5,353,800.00, "Lincoln is representing to Mutal Savings that they contributed $4.3MM when Midland contributed $3MM and Cross Bank contributed $1.3MM", expressly and implicitly accusing Lincoln Capital of making false and fictitious representations in connection a loan participation agreement and directly imputing fraud, dishonesty, and deceit to Lincoln Capital in the very core of its business operations.

38. Each of the forgoing statements made by Goris in the December 24, 2024 Letter purports to describe factual circumstances about Lincoln Capital's business operations, lending practices, and management. These statements are not expressions of opinion, rhetorical hyperbole, or subjective commentary; rather, they are presented as verifiable factual assertions regarding Lincoln Capital's conduct.

39. Goris's statements concerning alleged "financial and emotional strain" caused by Lincoln Capital "due to actions taken under James Robertson's leadership" accuse Lincoln Capital of engaging in improper business practices that harmed its customers. These are factual assertions about Lincoln Capital's conduct in its business dealings.

40. Goris's statement that she had "evidence" of Lincoln Capital's "troubling discrepancies and misconduct" is a purported factual representation that Lincoln Capital engaged in unethical or

unlawful activity. It is not couched as opinion or speculation, but as a declaration of purported proof of wrongdoing.

41. Goris's statement that Lincoln Capital misrepresented its contribution in connection with a $5,353,800 loan—by "representing to Mutual Savings that they contributed $4.3MM when Midland contributed $3MM and Cross Bank contributed $1.3MM"—is an assertion of specific, verifiable fact. It accuses Lincoln Capital of making false and fictitious representations to a financial institution in the context of a loan participation agreement. This is a factual allegation of dishonesty and fraud in the core of Lincoln Capital's professional activities.

42. These statements, taken together, convey to the ordinary reader that Lincoln Capital engaged in misconduct, deception, and misrepresentation in the course of its business. They concern Lincoln Capital's honesty, integrity, and competence in its trade and profession, which are all factual matters directly bearing on its ability to function and maintain trust in the financial marketplace.

43. Under Florida law, false statements that impute fraudulent, dishonest, or unethical conduct to a business in the conduct of its trade or profession are defamatory *per se*, because they inherently injure the business's reputation, prejudice it in the eyes of customers, lenders, and the community, and subject it to distrust and contempt.

44. The foregoing statements are capable of being proven true or false, as they concern verifiable matters such as Lincoln Capital's lending practices, loan participation contributions, and alleged business "misconduct." Because these statements are objectively provable, they are statements of fact, not opinion, and their falsity renders them actionable as defamation *per se* under Florida law.

45. Goris published these statements with actual malice, knowing they were false or with reckless disregard for their falsity.

46. Goris's publication of the December 24, 2024 Letter to Mr. Ford was intentional and without privilege.

47. Goris's statements constitute defamation *per se* under Florida law because they accuse Lincoln Capital of fraud, dishonesty, and misconduct in its business, and directly prejudice Lincoln Capital in its trade and profession.

48. As a direct and proximate result of Goris's defamatory *per se* statements, Lincoln Capital has suffered harm to its business reputation, goodwill, and standing in the financial and business community.

49. Because the statements are defamatory *per se*, Lincoln Capital is entitled to presumed damages for reputational injury, loss of goodwill, humiliation, and other harm, as well as punitive damages based on Goris's actual malice.

**WHEREFORE**, Plaintiff Lincoln Capital respectfully demands judgment against Goris for compensatory damages, presumed damages, punitive damages, costs, interest, and such further relief as this Court deems just and proper.

## COUNT II
### Defamation *Per Se*
### (Borrower Email)

50. Plaintiff Lincoln Capital reaffirms and realleges paragraphs 1 through 31 as if fully set forth herein.

51. On or around August 2025, Goris authored and published the Borrower Email to at least one third party, a former borrower of Lincoln Capital. The Borrower Email was received and understood by that third party.

52. In the Borrower Email, Goris falsely stated that Lincoln Capital's "***mission is to prey on*** [borrowers] and ***take advantage of them*** in every possible way."

53. In the Borrower Email, Goris falsely stated that Lincoln Capital engages in "***extortion***."

54. In the Borrower Email, Goris falsely stated that Lincoln Capital deliberately and regularly undertakes actions to the financial detriment and harm of its borrowers.

55. In the Borrower Email, Goris falsely stated that Lincoln Capital has engaged in "***fraud***" and "***misconduct***" involving financial services.

56. Goris's false statement that Lincoln Capital's "mission is to prey on [borrowers] and take advantage of them in every possible way" is defamatory *per se* because it accuses Lincoln Capital of predatory lending practices and intentional exploitation of its clients. Such a statement imputes dishonest and unethical conduct to Lincoln Capital in the very core of its business.

57. Goris's false statement that Lincoln Capital engages in "extortion" is defamatory *per se* because it accuses Lincoln Capital of committing a serious crime involving moral turpitude and abuse of power. An accusation of extortion, on its face, imputes criminality and illegality to Lincoln Capital's business practices, which is inherently defamatory *per se* under Florida law.

58. Goris's false statement that Lincoln Capital deliberately and regularly undertakes actions to the financial detriment and harm of its borrowers is defamatory *per se* because it imputes that Lincoln Capital intentionally injures its clients, acts in bad faith, and operates contrary to lawful and ethical lending standards. Such an accusation undermines Lincoln Capital's professional integrity and competence, which are essential to its trade, thereby constituting defamation *per se*.

59. Goris's false statement that Lincoln Capital has engaged in "fraud" and "misconduct" involving financial services is defamatory *per se* because it charges Lincoln Capital with fraudulent and dishonest practices at the heart of its professional activities. Under Florida law,

false statements imputing fraud or misconduct in a business's trade or profession are actionable as defamation *per se* because they inherently prejudice the business, damage its reputation for honesty, and expose it to distrust, ridicule, and legal jeopardy.

60. Collectively, the foregoing false statements in the Borrower Email accuse Lincoln Capital of predatory lending, extortion, deliberate harm to its clients, and fraud and misconduct in the financial services industry. Taken as a whole, the Borrower Email is defamatory *per se* because it portrays Lincoln Capital as a dishonest, criminal, and unethical enterprise. These statements go to the very heart of Lincoln Capital's business reputation and professional integrity, and under Florida law, such accusations inherently prejudice a business in its trade, injure its standing in the community, and subject it to distrust, contempt, and avoidance.

61. As a direct and proximate result of Goris's defamatory *per se* statements in the Borrower Email, Lincoln Capital has suffered harm to its reputation, goodwill, and business relationships within the financial services industry.

62. Because Goris's statements constitute defamation *per se*, damages to Lincoln Capital's reputation, goodwill, and standing in the community are presumed under Florida law, without the necessity of proving special damages.

63. Goris acted with actual malice in making and publishing these statements, as she knew they were false at the time she made them, or acted with reckless disregard for their truth or falsity.

64. Each of the foregoing statements in the Borrower Email purports to describe factual circumstances about Lincoln Capital's lending practices and business operations. The statements are not framed as speculation, rhetorical hyperbole, or subjective opinion, but as definitive assertions of fact about Lincoln Capital's conduct.

65. The statement that Lincoln Capital's "mission is to prey on [borrowers] and take advantage of them in every possible way" is a verifiable factual assertion. It is capable of being proven true or false by examining Lincoln Capital's actual lending practices and treatment of its borrowers.

66. The statement that Lincoln Capital engages in "extortion" is a verifiable factual assertion because it alleges criminal conduct defined by law. Whether or not Lincoln Capital has engaged in extortion is an objective, provable fact.

67. The statement that Lincoln Capital deliberately and regularly undertakes actions to the financial detriment and harm of its borrowers is a verifiable factual assertion, as it alleges a systematic business practice capable of proof or disproof.

68. The statement that Lincoln Capital has engaged in "fraud" and "misconduct" involving financial services is a verifiable factual assertion, as fraud and misconduct are specific categories of conduct with legal definitions that can be proven or disproven.

69. Because these statements concern verifiable facts about Lincoln Capital's lending practices and financial services, and are not couched as protected opinion or rhetorical exaggeration, they are actionable as defamatory *per se* under Florida law.

70. As a direct and proximate result of Goris's defamatory *per se* statements in the Borrower Email, Lincoln Capital has suffered harm to its reputation, goodwill, and business relationships within the financial services industry.

71. Because Goris's statements constitute defamation *per se*, damages to Lincoln Capital's reputation, goodwill, and standing in the community are presumed under Florida law, without the necessity of proving special damages.

72. As a result, Lincoln Capital is entitled to compensatory damages for reputational harm, presumed damages for humiliation and loss of goodwill, and punitive damages to punish and deter Goris's malicious conduct.

**WHEREFORE**, Plaintiff Lincoln Capital respectfully demands judgment against Goris for compensatory damages, presumed damages, punitive damages, costs, interest, and such further relief as this Court deems just and proper.

## COUNT III
### Injunctive Relief

73. Plaintiff Lincoln Capital re-alleges and incorporates by reference paragraphs 1 through 72 as if fully set forth herein.

74. Goris has published and disseminated false and defamatory statements concerning Lincoln Capital in at least two separate publications: the Borrower Email and the December 24, 2024 Letter (collectively, the "Defamatory Publications").

75. Goris's Defamatory Publications accuse Lincoln Capital of predatory lending, extortion, fraud, misconduct, concealment, and other unethical and criminal conduct in the core of its business operations.

76. Goris's statements are false and defamatory, and their continued publication or republication would cause irreparable harm to Lincoln Capital's business reputation, goodwill, and professional standing in the financial community.

77. Money damages alone are inadequate to remedy the ongoing and future harm to Lincoln Capital's reputation, goodwill, and relationships with borrowers, lenders, and investors if Goris is permitted to continue publishing or republishing such defamatory statements.

78. Unless enjoined by this Court, Goris will continue to publish, disseminate, and/or republish false and defamatory statements regarding Lincoln Capital.

79. Lincoln Capital has a clear legal right to be free from false and defamatory attacks on its business reputation; Goris's ongoing conduct creates a well-founded fear of continuing injury; and no adequate remedy at law exists to prevent future harm.

80. Lincoln Capital therefore seeks both preliminary injunctive relief to prevent immediate and ongoing harm during the pendency of this action, and permanent injunctive relief upon final judgment to ensure Goris ceases her defamatory conduct.

**WHEREFORE**, Plaintiff Lincoln Capital respectfully requests that this Court enter an order:

A. Preliminarily enjoining Goris from publishing, disseminating, or republishing any statements that falsely accuse Lincoln Capital of fraud, misconduct, extortion, predatory practices, or other defamatory conduct, pending resolution of this case;

B. Permanently enjoining Goris from publishing, disseminating, or republishing any such defamatory statements upon entry of final judgment;

C. Requiring Goris to retract and remove the Defamatory Publications to the extent within her control;

D. Awarding Plaintiff its costs and reasonable attorneys' fees incurred in securing injunctive relief; and

E. Granting such further relief as this Court deems just and proper.

## Jury Trial Demand

Plaintiff hereby demands trial by jury as to all issues triable by right to a jury.

Dated: August 25, 2025                    Respectfully submitted,

**GUERONNIERE, P.A.**

        11863 Wimbledon Circle, #518
        Wellington, Florida 33414
        Telephone: (561) 670-1307
        Primary Email: grace@gueronnierelaw.com

By:    */s/ Grace de la Gueronniere*
        Grace de la Gueronniere, Esq.
        Florida Bar No. 1021673